Filed 5/20/21 P. v. Gomez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B303647 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA070040-02) |
| v. | |
| JOVANI GOMEZ, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge. Reversed and remanded.

Janet R. Gusdorff, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy

Attorney General, Charles S. Lee and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jovani Gomez, convicted in 2012 of first degree murder, attempted willful, deliberate and premeditated murder and shooting at an inhabited dwelling, appeals the superior court's postjudgment order denying his petition for resentencing under Penal Code section 1170.95[1] without appointing counsel or conducting an evidentiary hearing. The Attorney General agrees with Gomez the superior court erred in finding section 1170.95 unconstitutional and, alternatively, denying his petition for resentencing based solely on the jury's finding he had personally discharged a firearm causing the victim's death (§ 12022.53, subd. (d)).

We agree with Gomez, as well. We reverse the superior court's order and remand with directions to appoint counsel for Gomez, to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Gomez's Murder Conviction, Appeal and Sentencing on Remand*

   a. *The trial*

Our opinion reversing Gomez's first degree murder conviction under *People v. Chiu* (2015) 59 Cal.4th 155 (*Chiu*) describes in detail the evidence presented at trial, the jury's verdict and Gomez's original sentence. (*People v. Gomez* (June 23, 2015, B251303) [nonpub. opn.].)

_____

[1]     Statutory references are to this code.

2

Gomez, Kevin Alvarenga, Juan Carlos Andrade and Leonardo Garcia were charged in an information with murder (§ 187, subd. (a)) (count 1), attempted premeditated murder (§§ 187, subd. (a), 664) (count 2), two counts of shooting at an inhabited dwelling (§ 246) (counts 3 and 4), discharge of a firearm with gross negligence (§ 246.3, subd. (a)) (count 7) and street terrorism (§ 186.22, subd. (a)) (count 8). Gomez and Garcia were also charged with one count each of being a felon in possession of a firearm (former § 12021, subd. (a)(1)) (counts 5 and 6). It was specially alleged as to counts 1 through 7 that the offenses had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)) and as to counts 1 through 4 that each of the defendants had personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (b), (c), (d)) and/or a principal had personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (e)(1)).

According to the evidence at trial, German Chairez and Leonel Serrano were members of Columbus Street, a criminal street gang. Gomez, Alvarenga, Andrade and Garcia were members of the Vincent Town criminal street gang, a rival of Columbus Street's. On November 19, 2010 Chairez and Serrano were visiting a friend at an apartment complex in the North Hills section of the San Fernando Valley. As they walked down the stairs on their way out of the complex, Serrano heard someone shout "Fuck Columbus!" and saw two men shooting at him and Chairez. Serrano and Chairez immediately turned around and raced back up the stairs as shots continued to be fired. Both men were hit in the back. Chairez died from a bullet that perforated his lung. Serrano survived.

Salvador Ortiz was in the area of the apartment complex on the night of the shooting and encountered Andrade, Garcia and Gomez, known to him by their gang monikers, "Happy," "Baby" and "Clever," respectively. Ortiz noticed Andrade and Garcia were armed. One man had a semiautomatic weapon; the other a revolver. Their conversation was friendly because Ortiz, a member of the Barrio Van Nuys gang, was not a rival. Within a few minutes of talking to them, Ortiz heard a person in the alley shout that a "Columbus Streeter" was nearby. Andrade, Garcia and Gomez ran toward the apartment complex. Ortiz saw Garcia quickly pull out a gun from underneath his sweatshirt. Almost immediately, Ortiz heard a barrage of gunshots fired from two different guns. He did not see the actual shooting.

At trial Serrano denied seeing the shooters. Testifying after Serrano, Maria Gutierrez (Chairez's girlfriend and the mother of his child) explained she had overheard Serrano tell a friend that Clever and Big Boy, referring to Gomez and Garcia, had been the shooters and Happy and Kevin, referring to Andrade and Alvarenga, "had [also] been there." Brandon Binning testified that two days before the shooting Andrade had told him something "was going to go down" and "Columbus Street was going to see that Vincent Town was back."

The People introduced evidence that Gomez had made a call from his cell phone to Andrade at 11:16 p.m. on November 19, 2010, the approximate time of the shooting. The call, which went to Andrade's voicemail, connected to a cell tower just south of the crime scene. The People's wireless expert testified Gomez's cell phone was "in the vicinity" of the crime scene at the time of the shooting.

4

The People's theory at trial was that each of the defendants was either a direct perpetrator of the crimes charged or aided and abetted those offenses. In addition to instructions on murder (CALCRIM No. 520), first degree premeditated murder (CALCRIM No. 521), attempted murder (CALCRIM No. 600), attempted premeditated murder (CALCRIM No. 601) and shooting at an inhabited dwelling (CALCRIM No. 965), among others, the jury was instructed on direct aiding and abetting principles (CALCRIM Nos. 400, 401) and the natural and probable consequences doctrine (CALCRIM Nos. 402, 403). Under the natural and probable consequences doctrine, the jury was told, it could find any one of the defendants guilty of murder and/or attempted murder if he aided and abetted the target offenses of shooting at an inhabited dwelling and/or the uncharged target offense of assault with a firearm, and the natural and probable consequence of either target offense was murder or attempted murder.

The jury convicted Gomez, Andrade, Alvarenga and Garcia of first degree premeditated murder and all other charged offenses and found each of the special allegations true, including the section 12022.53, subdivision (d), firearm-use enhancement allegations as to the murder, attempted murder and shooting at an inhabited dwelling charges. Gomez was sentenced to an aggregate indeterminate state prison term of 162 years to life.

b. *Gomez's appeal*

On appeal we reversed Gomez's and his codefendants' convictions for first degree murder based on the Supreme Court's decision in *Chiu, supra*, 59 Cal.4th 155, decided after Gomez's trial, which held aiders and abettors may be convicted of first degree premeditated murder under direct aiding and

5

abetting principles, but not under the natural and probable consequences doctrine. (*Id.* at pp. 158-159.)[2]  We explained that, although the instructions arguably required the jury to find the individual who actually shot and killed Chairez possessed the requisite mental state of premeditation and deliberation for a first degree murder conviction, "without a clarification that the natural and probable consequences doctrine was limited to second degree murder, the instructions as a whole effectively permitted the jury to convict some or all of the defendants of first degree premeditated murder as an aider or abettor under that legally invalid theory."

We rejected the Attorney General's argument the *Chiu* error was harmless in light of the evidence at trial of planning and premeditation.  We held, "Although the evidence is certainly sufficient to support a finding of premeditation and deliberation in this case, the prosecutor relied heavily on the natural and probable consequences doctrine at trial, telling the jury repeatedly during closing argument it need not find the defendants intended to commit a murder so long as it found murder was a natural, probable and foreseeable consequence of a different target offense.  Nothing in this record demonstrates beyond a reasonable doubt that the jury based its verdict on the legally valid direct aiding and abetting (or direct perpetrator) theory rather than the invalid natural and probable consequences doctrine."  (Footnote omitted.)

We remanded the case, explaining the People had the election in accordance with *Chiu* of accepting a reduction of the

---

[2]  We also reversed the convictions for discharge of a firearm with gross negligence as a lesser included offense of the charge of shooting at an inhabited dwelling.

6

murder conviction on count 1 to second degree murder,[3] with all associated enhancements found true by the jury, or to retry the greater offense of first degree premeditated murder (along with the accompanying specially alleged enhancements) under a direct aiding and abetting theory.

### c. *Proceedings on remand*

On remand the People elected not to retry the first degree murder charge. Resentencing Gomez, the court imposed an indeterminate state prison term of 15 years to life for second degree murder plus 25 years to life for the firearm-use enhancement; two additional consecutive state prison terms of 15 years to life for shooting at an occupied dwelling for the benefit of a criminal street gang plus 25 years to life on each count for the firearm-use enhancements; and a consecutive life term with a minimum parole eligibility of 15 years for attempted premeditated murder plus 25 years to life for the firearm-use enhancement. A concurrent sentence of seven years was imposed on the firearm possession count, and a three-year prison term for street terrorism was stayed.

### 2. *Gomez's Petition for Resentencing*

On November 18, 2019 Gomez, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel. Gomez checked several boxes on the printed form petition establishing his eligibility for resentencing relief, including the box stating he could not now be convicted of

---

[3] *Chiu* did not change the law regarding use of the natural and probable consequences doctrine to prove second degree murder. (See *Chiu, supra*, 59 Cal.4th at p. 166.)

first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.

The superior court summarily denied the petition on December 6, 2019. In its order denying the petition the superior court stated, based on the jury's finding Gomez had personally used and discharged a firearm causing great bodily injury or death, "[I]t is clear that Petitioner was the actual killer or at a minimum aided and abetted the killing and/or was a major participant in the crime and acted with reckless indifference of the victim's life."

The court alternatively denied Gomez's petition on the ground Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), which enacted section 1170.95, is unconstitutional. In a single paragraph the court ruled Senate Bill 1437 impermissibly amended Proposition 7 (the Death Penalty Act, approved by voters in November 1978) and Proposition 115 (the Crime Victims Justice Reform Act, approved by voters in June 1990) by changing the definition of felony murder and eliminating the natural and probable consequences doctrine as a basis for accomplice liability for murder; violated article I, sections 28, subdivision (a)(6), and 29 of the California Constitution insofar as it provided a procedure to vacate final judgments in criminal cases; and also violated the constitutionally mandated separation of powers doctrine.

Gomez filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839 (*Gentile*)) and significantly limited the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 236, review granted Mar. 10, 2021, S266652; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080.) Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Gentile*, at p. 859.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), prescribes a process for the court to determine whether to issue an order to show cause and hold an evidentiary hearing to consider if the murder conviction should be vacated and the petitioner resentenced on any remaining counts. The superior court properly proceeds under subdivision (c) in two steps, "one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95— that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the

9

petitioner has made a prima facie showing he or she is entitled to relief." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328 (*Verdugo*), review granted Mar. 18, 2020, S260493; accord, *People v. York* (2020) 54 Cal.App.5th 250, 262, review granted Nov. 18, 2020, S264954; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1054, review granted Sept. 23, 2020, S263939; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June 24, 2020, S262011; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 118, review granted Nov. 10, 2020, S264684 [section 1170.95, subdivision (c), contemplates only one prima facie review before an order to show cause issues].)

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1); see *Verdugo*, *supra*, 44 Cal.App.5th at p. 327, review granted.) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *People v. Rodriguez*, *supra*, 58 Cal.App.5th at p. 230, review granted; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309 [prosecutor must only prove a reasonable jury could find the defendant guilty of murder with the requisite mental state; "[t]his is essentially identical to the standard of substantial evidence"].) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *People v. Tarkington* (2020)

49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 981.)

2. *Senate Bill 1437 Is Constitutional*

Gomez contends, and the Attorney General agrees, the superior court erred in holding section 1170.95, as enacted through Senate Bill 1437, is unconstitutional.

In a comprehensive analysis of Propositions 7 and 115 and Senate Bill 1437, as well as the separation of powers doctrine and victims' rights to finality of judgments as protected in Marsy's Law, our colleagues in Division Two of the Fourth District in *People v. Johns* (2020) 50 Cal.App.5th 46, 63-69 explained why each of the constitutional objections being raised to Senate Bill 1437 lacked merit. All other courts of appeal that have considered any of these grounds for a constitutional attack on Senate Bill 1437 have likewise rejected them. (See, e.g., *People v. Marquez* (2020) 56 Cal.App.5th 40; *People v. Prado* (2020) 49 Cal.App.5th 489; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 20202, S262835; *People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Solis* (2020) 46 Cal.App.5th 762; *People v. Cruz* (2020) 46 Cal.App.5th 740; *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270; *People v. Lamoureux* (2019) 42 Cal.App.5th 241.) We find the reasoning in these cases compelling and adopt it as our own.

3. *The Superior Court Erred in Summarily Denying Gomez's Petition for Resentencing*

As discussed, this court held the trial record did not establish beyond a reasonable doubt that Gomez had been convicted of first degree murder on a legally valid theory (as the shooter acting with express malice and premeditation or as a direct aider and abettor of such a shooter) rather than as an aider

11

and abettor of the target offense of shooting at an inhabited dwelling under the natural and probable consequences theory invalidated in *Chiu*.  That holding necessarily established Gomez's prima facie eligibility for resentencing under section 1170.95, and he was entitled to an evidentiary hearing to determine whether the court should vacate his murder conviction and resentence him on the remaining counts (which would include attempted murder and two counts of shooting at an inhabited dwelling).

The superior court, however, unconcerned with reconciling its decision with our holding and analysis of the trial record on Gomez's direct appeal, ruled a true finding on the section 12022.53, subdivision (d), firearm enhancement necessarily meant Gomez had acted with the mental state now required for a murder conviction under sections 188 and 189.  That ruling rests on a misunderstanding of the requirements for the firearm enhancement found true at Gomez's trial.  (See *People v. Lucero* (2016) 246 Cal.App.4th 750, 759 ["Section 12022.53, subdivisions (c) and (d) both provide for additional punishment for a defendant who 'personally and intentionally discharges a firearm' under specified circumstances.  Both subdivisions refer only to the description of a particular act—discharging a firearm—without reference to the defendant's intent to achieve any additional consequence.  Further, neither subdivision includes 'language typically denoting specific intent crimes, such as "with the intent" or "for the purpose of"'"].)

The court in *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*) explained the flaw in the superior court's reasoning in an analogous section 1170.95 case.  In *Offley* the petitioner, one of five defendants who took part in a gang-related shooting, was

charged with murder, attempted murder and shooting at an occupied vehicle. (*Offley*, at p. 592.) Even though there was no separate conspiracy count, the People presented evidence of a conspiracy among the gang members; and the jury was instructed a member of a conspiracy is guilty not only of the particular crime he knows his confederates agreed to and committed, but also for the natural and probable consequences of any crime of a coconspirator to further the object of the conspiracy. (*Id.* at p. 593.) Offley was convicted of the three crimes charged, and the jury found true that he had personally used and intentionally discharged a firearm proximately causing death to the victim. (*Ibid.*)

The superior court summarily denied Offley's section 1170.95 petition at the first stage of the section 1170.95, subdivision (c), review as described in *Verdugo, supra,* 44 Cal.App.5th 320, review granted, based on the jury's true finding of the firearm enhancement. (*Offley, supra,* 48 Cal.App.5th at p. 597.) The court of appeal reversed. Offley had arguably been convicted of murder under the natural and probable consequences doctrine. Thus, the *Offley* court held Offley could now be convicted of murder only upon proof he had acted with express or implied malice when shooting the victim; and, "[b]ecause an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Offley*, at p. 598.)[4] Elaborating on this point, the court

---

[4] The *Offley* court continued, "Of course, the trial court may look beyond the abstract of judgment and consider the entire record of conviction, including any prior Court of Appeal opinions

13

explained, "The jury might have concluded that Offley intended to take part in a conspiracy to commit assault with a firearm, or to fire into an occupied vehicle, with the aim of either injuring or merely frightening Barrales.  The jury could have then concluded that Barrales's death was the natural and probable consequence of the conspiracy and convicted [Offley] of murder without finding beyond a reasonable doubt that he acted with malice aforethought.  For this reason, we cannot say that Offley 'is ineligible for relief as a matter of law.'" (*Id*. at p. 599.)

Similarly in the case at bar, in light of the instructions and the prosecutor's closing argument, the jury may have convicted Gomez of murder and found true the section 12022.53, subdivision (d), firearm-use enhancement based on his participation in the target crime of shooting at an inhabited dwelling and its conclusion Chairez's death was the natural and probable consequence of that act.[5]  As we held in Gomez's direct appeal, nothing in the trial record permits a contrary conclusion beyond a reasonable doubt, let alone as a matter of law, the standard required to deny a section 1170.95 petition without first issuing an order to show cause and conducting an evidentiary hearing.  (See *People v. Smith*, *supra*, 49 Cal.App.5th at p. 92,

---

in the case, in determining whether a petitioner has made a prima facie case of eligibility." (*Offley*, *supra*, 48 Cal.App.5th at pp. 598-599.)

[5]     The superior court seemed to recognize this likely scenario, while ignoring its legal significance, stating in its order, "[I]t is illogical to think that when Petitioner discharged the firearm resulting in death to a human being, that *his* act, which resulted in the death of a human being, was not a natural and probable consequence of his actions."

14

review granted ["[i]f it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition"]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [record must show defendant is "indisputably ineligible for relief"]; see also *Verdugo, supra*, 44 Cal.App.5th at p. 330, review granted.)

4. *The Remedy: Remand for an Evidentiary Hearing*

Both Gomez and the Attorney General ask us to remand the matter for further proceedings under section 1170.95. However, the Attorney General, noting the superior court erred at the first of the two steps in the prima facie review process described in *Verdugo, supra*, 44 Cal.App.5th at page 328, review granted, suggests the remand should be to permit the superior court to complete the second step of that process—that is, to appoint counsel for Gomez and to allow the parties to brief whether the record of conviction establishes as a matter of law that Gomez is ineligible for resentencing. Only after Gomez prevails on that second step, the Attorney General contends, should an order to show cause issue and an evidentiary hearing be held pursuant to section 1170.95, subdivision (d).

The Attorney General is correct that *Verdugo* and the cases that have followed it contemplate a two-step process under section 1170.95, subdivision (c), before an order to show cause issues. Because of this appeal, however, both parties have had counsel fully brief the issue whether Gomez is ineligible for resentencing as a matter of law. He is not. Delay and a waste of resources would be the only products of a remand that did not direct the court to issue an order to show cause and follow the

15

procedure detailed in section 1170.95, subdivision (d).  We decline to engage in such a meaningless formality.

## DISPOSITION

The order denying Gomez's section 1170.95 petition is reversed.  On remand the superior court is to appoint counsel for Gomez, to issue an order to show cause and to conduct further proceedings in accordance with section 1170.95, subdivision (d).


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

16